# EXHIBIT A

**COPY**

| | |
|---|---|
| IN THE STATE OF SOUTH CAROLINA ) | IN THE COURT OF COMMON PLEAS |
| ) | FOR THE SECOND JUDICIAL CIRCUIT |
| COUNTY OF AIKEN ) | |
| ) | Civil Action No.: 2005-CP-02-0068 |
| Inez Sanders, Dorothy Newsome, Garlan ) | |
| Harper, Rita Harper, James Wall, ) | |
| individually and on behalf of all others ) | |
| similarly situated ) | |
| ) | **THIRD** |
| Plaintiffs, ) | **AMENDED SUMMONS** |
| ) | |
| vs. ) | |
| ) | |
| Norfolk Southern ) | |
| Corporation, a Virginia ) | |
| Corporation; Mike Ford; ) | |
| and James Thornton; ) | |
| ) | |
| Defendants. ) | |

TO: THE DEFENDANTS ABOVE NAMED AND THEIR COUNSEL:

YOU ARE HEREBY SUMMONED and required to answer the Third Amended Complaint in this action, a copy of which is hereby served upon you, and to serve a copy of your Answer to the said pleading upon the subscribers at their offices, 1201 Main Street, Suite 1800, Post Office Box 1799, Columbia, South Carolina 29202, within fifteen (15) days after service hereof, exclusive of the day of such service, and if you fail to answer the Third Amended Complaint within the time aforesaid, judgment by default will be rendered against you for the relief demanded in the Third Amended Complaint.

                FINKEL LAW FIRM LLC
                1201 Main Street, Suite 1800
                Post Office Box 1799
                Columbia, South Carolina 29202
                (803) 765-2935

By: _____
                Harry L. Goldberg
                William R. Padget
                Attorneys and Local Counsel for Plaintiffs

Columbia, South Carolina
June 4, 2008



| | |
|---|---|
| IN THE STATE OF SOUTH CAROLINA | IN THE COURT OF COMMON PLEAS |
| COUNTY OF AIKEN | FOR THE SECOND JUDICIAL CIRCUIT |
| | Civil Action No.: 2005-CP-02-0068 |
| Inez Sanders, Dorothy Newsome, Garlan Harper, Rita Harper, James Wall, individually and on behalf of all others similarly situated | |
| Plaintiffs, | **THIRD AMENDED CLASS ACTION COMPLAINT** (Jury Trial Demanded) |
| vs. | |
| Norfolk Southern Corporation, a Virginia Corporation; Mike Ford; and James Thornton; | |
| Defendants. | |

COPY ORIGINAL FILED JUN - 6 2008 AIKEN COUNTY CLERK OF COURT

## I. INTRODUCTION

NOW INTO COURT, through undersigned counsel, comes Plaintiffs, who respectfully represent:

1. Made Defendants herein are:

   a. Defendant Norfolk Southern Corporation ("NSC"), a Virginia Corporation, licensed and doing business in South Carolina, with its principal place of business in Norfolk, Virginia.

   b. Defendant Mike Ford ("Ford") is a citizen and resident of Lexington County, State of South Carolina.

c. Upon, information and belief, Defendant Jimmy Ray Thornton ("Thornton") is a citizen and resident the State of South Carolina. (hereinafter Defendants Ford and Thornton will be referred to collectively as the "Train 1 Crew").

2. Plaintiffs bring this action on their own behalf and on behalf of all persons, similarly situated, whose claims were not compromised or adjudicated by the Court's <u>Final Order and Judgment Certifying the Class for Purposes of Settlement, Approving the Class Action Settlement, Approving Attorney's Fees, and Dismissing the Action with Prejudice</u> in the *In Re Graniteville Train Derailment* (C/A No.: 1-05-115-MBS) dated August 24, 2005. This action should be certified as a class action pursuant to S.C.R.C.P. 23, for the following reasons.

3. The class is so numerous that joinder of all members is impracticable. Thousands of people were adversely affected by this incident. They suffered damages in the past and/or into the foreseeable future, including, emotional distress, fear and fright, property damage, diminution of property value, loss of income, business interruption, out-of-pocket expenses, evacuation and inconvenience. A mass joinder of that many plaintiffs would be impracticable to manage by the Court and by counsel. (S.C.R.C.P. 23(a)(1)).

4. There are questions of law and/or fact common to the class, including the issues of the cause of the derailment and chemical release at issue, Defendants' liability for compensatory and punitive damages, and general causation of damages. (S.C.R.C.P. 23(a)(2)).

5. The claim of the representative plaintiffs are typical of the claims of the class. The representative parties herein have suffered damages in the past and/or into the foreseeable future, including, emotional distress, fear and fright, property damage, diminution of property value, loss of income, out-of-pocket expenses, evacuation and inconvenience. (S.C.R.C.P. 23(a)(3)).

6. The representative plaintiffs will fairly and adequately protect the interests of the class. The representative Plaintiffs have no relationship with the defendants in this case. Undersigned counsel for the representative plaintiffs will vigorously prosecute this action on behalf of the entire class. Undersigned counsel have the knowledge and experience to protect the interests of the entire class and are willing to commit the financial resources to prosecute this action on behalf of the entire class. (S.C.R.C.P. 23(a)(4)).

7. The class may be defined objectively in terms of ascertainable criteria, such that the court may determine the constituency of the class for purposes of the conclusiveness of any judgment that may be rendered in the case. This action resulted from a single incident, the harmful effects of which may be objectively defined and identified by the court. The class herein consists of all persons, corporations, firms or entities who were located within a radius of five miles from the site of the collision and were evacuated or sheltered in place as a result of the NSC train collision and derailment on January 6, 2005 in Graniteville, South Carolina, excluding those persons and/or claims compromised and adjudicated by the Court's <u>Final Order and Judgment Certifying the Class for Purposes of Settlement, Approving the Class Action Settlement, Approving Attorney's Fees, and Dismissing the Action with Prejudice</u> in the *In Re Graniteville Train Derailment* (C/A No.: 1-05-115-MBS) dated August 24, 2005.

8. The amount in controversy exceeds $100.00 for each member of the Class. (S.C.R.C.P. 23(a)(5)).

9. The prosecution of separate actions by individual members of the class would be impracticable and would create a risk of inconsistent or varying adjudications with respect to individual members of the class, which would establish incompatible standards of conduct for the defendants herein.

10. Adjudications with respect to individual members of the class would, as a practical matter, be dispositive of the interests of the other members not parties to the adjudications or will substantially impair or impede their ability to protect their interests, especially as it concerns the common issues identified in paragraph 4, above.

11. The questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy. For those plaintiffs with relatively small claims, it would be extremely difficult to prosecute their claims on their own. The enormous cost of proving the common issues of Defendants' liability for compensatory and punitive damages, quantum of punitive damages and general causation would be prohibitive for the individual claimant.

## II.  ALLEGATIONS OF FACT COMMON TO ALL COUNTS

12. NSC is one the nation's largest rail carriers. It operates more than 21,000 miles of railroad track in twenty-two states, including South Carolina. It has its Operations Control Center, Crew Management Center and operations offices in Atlanta, Georgia. NSC's corporate headquarters are in Norfolk, Virginia.

13. Upon information and belief, NSC's rail operations in South Carolina are controlled and managed from its facility in Atlanta, Georgia.

14. NSC transports a wide array of products on its rail systems, including, but not limited to, dangerous, toxic chemicals.

15. On information and belief, at some time prior to 2:38 a.m. on January 6, 2005, a NSC locomotive and two freight cars pulled off the NSC main line onto a spur at the Avondale Mills facility in Graniteville, South Carolina, and the crew then left the train (hereinafter referred

to as "Train 1").

16. On information and belief, the crew of this train, the Train 1 Crew previously identified, left the switch from the main line to the spur open, allowing rail traffic on the main line to travel onto the spur.

17. On information and belief, at approximately 2:38 a.m. on January 6, 2005, a second NSC locomotive (hereinafter "Train 2"), pulling a train of three locomotives and 42 rail cars collided with the NSC's Train 1, which was parked on the Avondale Mills spur.

18. On information and belief, as a result of the collision, at least 13 railcars were derailed, including at least three tank cars containing the chemical chlorine.

19. Upon information and belief, one or more of the tank cars ruptured resulting in the release of a deadly cloud of chlorine gas. Subsequent exposure to the chlorine gas resulted in death or serious injury to many of the individuals.

20. The following timetable lists the events effecting the claims at issue herein:

    (a) At 3:00 a.m. Sheriff Michael Hunt was notified of the accident.

    (b) At 3:45 a.m. South Carolina Emergency Management Division (SCEMD) was notified of the accident.

    (c) At 5:00 a.m. local media in the area surrounding the collision site began broadcasting news coverage reporting deaths, injuries, and a traveling cloud of deadly chlorine gas to areas extending many miles from the collision.

    (d) At 5:09 a.m. the SCEMD Emergency Alarm System was activated and a message broadcast telling residents to evacuate.

    (e) At 6:01 a.m. the National Weather Service radio system was activated to

emit a loud noise to awaken residents of the area.

(f) At 6:27 a.m. "reverse 911" calls were made to thousands of residents by emergency authorities telling citizens to shelter-in-place, turn off all ventilation systems and stay inside their houses and businesses.

(g) At 12:00 p.m., Governor Sanford issues a declaration of a State of Emergency for all of Aiken County.

(h) At 2:30 p.m., 12 hours after the incident, and nine hours after the media began publicizing the existence of a wind-driven toxic chlorine cloud, a one-mile mandatory direct evacuation order was given, with a two-mile curfew from 6:00 p.m. to 7:00 a.m. put into effect.

21. Because of the inexactness of the warnings and their inexact targeting of citizens, more than half of the citizens in the area between one mile and two miles of the incident received direct evacuation messages, from media, safety officers or the reverse 911 system, and thousands of others reasonably believed they might be in the path of a deadly chlorine cloud.

22. All persons within the class were targeted with some sort of warning and were aware of the extreme danger created by the collision, but were not told of a one mile evacuation zone until 2:30 p.m.

23. Upon information and belief approximately 60% of persons more than one mile but less than five miles from the collision who would be members of the Class actually evacuated based upon the available information. These individuals would be members of an Evacuation Subclass in this action. All remaining Class Members who sheltered in place would be members of a Shelter in Place Subclass in this action.

24. All Class Members who evacuated or sheltered in place were adversely effected by

the collision and acted reasonably in responding as they did, given the apparent risk they were confronting, and the information and instructions provided to them.

25. Upon information and belief, continuously from the time of the collision until many days thereafter, NSC's tank cars emitted toxic fumes from the site of the derailment into the air, released toxic gas and fluids into the ground, streams and water table surrounding the collision site, causing damage to persons, property, plants and animals in its path.

26. As a direct result of the release, and its aftermath, Plaintiffs, and the Class of persons Plaintiffs represent, excluding those persons and/or claims compromised and adjudicated by this Court's <u>Final Order and Judgment Certifying the Class for Purposes of Settlement, Approving the Class Action Settlement, Approving Attorney's Fees, and Dismissing the Action with Prejudice</u> in the *In Re Graniteville Train Derailment* (C/A No.: 1-05-115-MBS) dated August 24, 2005, have suffered damages in the past and/or into the foreseeable future, including emotional distress, fear and fright, property damage, loss of income, out-of-pocket expenses, evacuation and inconvenience.

27. Upon information and belief, at all times pertinent hereto, the Train 1 Crew was employed by NSC to operate freight locomotives and perform related tasks, such as operating switches to move trains onto adjacent rails or sidings.

28. On information and belief, the operation of the track switches was within the scope of the Train 1 Crew's employment with NSC.

### COUNT ONE AGAINST ALL DEFENDANTS- NEGLIGENCE

29. Paragraphs 1 through 28 are pled as if set forth in full herein.

30. Defendants have a duty to conduct themselves and their operations in a safe manner and to operate and maintain track, switches and locomotives, and to train personnel, so as

to prevent collisions that would endanger the communities through which its tracks run.

    31.    Defendants breached their duties in the following, non-exclusive respects:

        a.    Allowing a hazardous situation to exist, including, but not limited to, leaving a siding switch improperly open;

        b.    Failing to properly inspect to assure that switches and track were fit for their intended purposes;

        c.    Acting in a careless and negligent manner without due regard for the safety of others;

        d.    Failing to promulgate, implement and enforce rules and regulations pertaining to the safe operation of the train and railroad system;

        e.    Inadequately and negligently training, hiring and retaining its employees, including employees who were known to be unfit for their duties;

        f.    Failing to take appropriate action to avoid or mitigate the accident;

        g.    Negligently implementing policies and procedures to safely operate and maintain the train and track, including switches;

        h.    Failing to properly inspect, maintain and operate the train, the track, including switches, and other equipment in question, including all contents, components and appurtenances;

        i.    Employing untrained or poorly trained employees and failing to properly train employees;

        j.    Failing to ascertain that the track and switches in question were free from defects or were in improper working order;

      k.      Failing to recognize and properly react to indications and warning signs of the derailment and emissions;

      l.      Failing to timely evacuate;

      m.      Failing to timely warn;

      n.      Any other actions or inactions which may be discovered and proven at trial.

32. As a proximate result of the foregoing, Plaintiffs and the Class have suffered damages, as more particularly set forth above.

33. In the alternative, the damage to plaintiffs would not have normally occurred if Defendant, who was responsible for the ownership, control, operation, use, maintenance, inspection and/or transportation and handling of the hazardous chemicals in the derailed train or tanks, had exercised the high degree of care placed upon it by law in the discharge of these duties, the specific failure of which plaintiffs may not be able to prove, but which was and is within the knowledge of defendants, and which leads to no other conclusion than that defendants were at fault. Therefore, plaintiffs specifically plead, to the extent of its application in South Carolina, the doctrine of *res ipsa loquitur* as to all defendants named herein.

34. On information and belief, Defendants breached federal, state and/or local laws and/or regulations governing their ownership, control, operation, use, maintenance, inspection and/or transportation and handling of hazardous materials, which were designed to specifically protect against occurrences such as the collision and release, and which were specifically designed to protect the Plaintiffs and the Class against the damages they suffered from the collision and release. Because these laws and/or regulations impose a fixed duty of care, and because Defendant breached that duty, Defendant is guilty of negligence *per se*. Plaintiffs do not

assert any *claims* created under federal law.

## COUNT TWO AGAINST DEFENDANT NSC– STRICT LIABILITY

35. Paragraphs 1 through 34 are pled as if set forth in full herein.

36. Defendant, NSC has caused to be brought into the State of South Carolina, and/or have controlled and transported in the State of South Carolina, hazardous, toxic substances, including chlorine.

37. NSC had exclusive custody of said toxic substances, and had complete control over the handling, use, transportation, inspection and/or protection of these dangerous materials.

38. NSC's activities with respect to the handling, use, transportation, inspection and/or protection of said toxic materials constitute "ultra-hazardous" or "inherently dangerous" activities similar to blasting or the use of explosives.

39. On information and belief, NSC's ultra-hazardous activities in the handling, use, transportation, inspection and/or protection of said toxic materials were a direct and proximate cause of the collision and chemical release and, as such, Defendant is strictly and absolutely liable to Plaintiffs and the Class for all the damages suffered by them, as more particularly set forth above.

## COUNT THREE AGAINST DEFENDANT NSC– NUISANCE

40. Paragraphs 1 through 39 are pled as if set forth in full herein.

41. The collision, and the resulting release of toxic chemicals into the air and water, constitute a public and private nuisance in that they impaired the Plaintiffs and the Class in particular, and the public in general, from the enjoyment and free use of their homes and property.

42. This nuisance was caused by the Defendant NSC's habitual improper handling, use, transportation, inspection and/or protection of hazardous materials which has caused toxic

releases in the past, and which continues to emit toxic chemicals into the air and water, which annoys, inconveniences, endangers, and disturbs the plaintiffs, the class, and the public in general, in health, safety and comfort of their homes and property.

## COUNT FOUR AGAINST DEFENDANT NSC – TRESPASS

43. Paragraphs 1 through 42 are pled as if set forth in full herein.

44. On information and belief, Defendant NSC intentionally handled, used, transported, inspected and/or protected hazardous materials in such a way that the collision and release would inevitably occur, resulting in hazardous toxic chemicals entering, via air and water, upon land, in the legal ownership and/or possession of the Plaintiffs and the Class, thereby making Defendant liable for trespass, without proof of actual harm.

45. Alternatively, Defendant NSC recklessly or negligently caused hazardous toxic chemicals entering, via air and water, upon land, in the legal ownership and/or possession of the plaintiffs and the class, causing harm to the land, thereby making Defendant liable for trespass.

## COURT FIVE AGAINST DEFENDANT NSC– PUNITIVE DAMAGES

46. Paragraphs 1 through 45 are pled as if set forth in full herein

47. Upon information and belief, Defendant NSC knew of the hazards attendant to the handling, use, transportation, inspection and/or protection of the dangerous chemicals it was transporting, and knew that exposure to these chemicals involved a serious risk of personal injury to persons, damage to property, emotional distress, fear and fright, diminution of property value, loss of income, business interruption, out-of-pocket expenses, evacuation and inconvenience.

48. In spite of Defendant NSC's knowledge of the hazards associated with chlorine and, its knowledge of the risks involved, and its prior history of unauthorized toxic releases, Plaintiffs are informed and believe that Defendant intentionally, or with wanton and reckless

disregard for the public safety, failed to take protective measures to prevent the collision from occurring in the first place and/or intentionally, or with wanton and reckless disregard for the public safety, failed to implement safety procedures and/or devices to suppress or control the resulting release.

49. As a result of the foregoing intentional or wanton and reckless conduct by Defendant, the collision and subsequent release occurred, causing extensive damages to the Plaintiffs and the Class.

50. Plaintiffs specifically allege that the handling, use, transportation, inspection and/or protection of the dangerous chemicals was done in such a way as to evince a reckless disregard for the public safety in general and for the Plaintiffs and the Class in particular, and Plaintiffs specifically allege that such conduct subjects Defendant to absolute liability and punitive damages.

## COUNT SIX AGAINST DEFENDANT NSC - ATTORNEYS FEES

51. Paragraphs 1 through 50 are pled as if set forth in full herein.

52. On information and belief, the foregoing wrongful acts of Defendant NSC was in bad faith, obliging Defendant to pay Plaintiffs' attorneys fees and expenses of this litigation.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for the following relief against Defendants:

A. That, as soon as practicable, the Court certify this action as a class action;

B. That there be a trial by jury on all issues in this case allowed by law;

C. That there be judgment in favor of the Plaintiffs, and the Class so certified, and against the Defendants, jointly and severally, for the full amount of damages suffered by Plaintiffs and the Class, including compensatory and punitive damages

as set forth above;

D. That there be judgment in favor of the Plaintiffs, and the class so certified, and against the Defendants, jointly and severally, for legal interest, court costs, attorneys fees and expenses, as allowed by law; and,

E. For all other general and equitable relief as this Court deems proper.

Respectfully submitted,

FINKEL LAW FIRM, L.L.C
1201 Main Street, Suite 1800
Post Office Box 1799
Columbia, South Carolina 29202
(803) 765-2935
(803) 252-0786 fax
Attorneys and Local Counsel for Plaintiffs

_____
Harry L. Goldberg
William R. Padget

Barry Reed, Esquire
Zimmerman Reed, PLLP
14646 North Kierland Blvd., Suite 145
Scottsdale, Arizona 85254-2762
(480) 348-6400 Telephone
(480) 348-6415 Facsimile
Attorney for Plaintiffs *(Pro Hac Vice)*

M. David Karnas, Esquire
BELLOVIN & KARNAS, P.C.
100 North Shore
Eleventh Floor, Suite 1105
Tucson, Arizona 85701
(520) 571-9700 Telephone
(520) 571-8556 Facsimile
Attorney for Plaintiffs *(Pro Hac Vice)*

W. Lewis Garrison, Jr., Esquire
GARRISON, SCOTT, P.C.
2224 First Avenue North
P.O. Box 11310 (35202)
Birmingham, Alabama 35203
(205) 326-3336 Telephone
(205) 326-3332 Facsimile
Attorney for Plaintiffs *(Pro Hac Vice)*

Columbia, South Carolina
June ___4___, 2008

## CERTIFICATE OF SERVICE

I, the undersigned Paralegal, of the law offices of Finkel Law Firm LLC, attorneys for the Plaintiffs, do hereby certify that I have served all counsel of record this 12th day, June 2008 in this action with a copy of the <u>Third Amended Class Action Complaint and Consent Order Granting Leave to Plaintiff to Amend Complaint,</u> by mailing a copy of the same by United States Mail, postage prepaid, to the following address(es):

Counsel for the Defendants served:

**Attorneys for Norfolk Southern Corporation**
Richard H. Willis, Esquire
Karen Aldridge Crawford
Nelson, Mullins, Riley & Scarborough, LLP
1320 Main Street, 17th Floor
Post Office Box 11070
Columbia, SC 29201
(803) 799-2000
(803) 255-9123

Daniel B. White, Esquire
Ronald K. Wray, II, Esquire
Gallivan, White & Boyd, P.A.
Post Office Box 10589
Greenville, SC 29603
(864) 271-5362
(864) 271-7502 (fax)

**Attorneys for Mike Ford**
Thornwell (Bif) F. Sowell, Esquire
Monteith Powell Todd, Esquire
Rebecca Lafitte, Esquire
Sowell Gray Stepp & Lafitte, LLC
1310 Gadsden Street
Post Office Box 11449
Columbia, SC 29211
(803) 929-1400
(803) 929-0300 fax

**Attorney for James Thornton**
J. Arthur Davison, Esquire
Post Office Box 1477
Augusta, GA 30913
(706) 721-0171
(706) 724-4573 (fax)

*Margaret M. Rock*
Margaret M. Rock
Paralegal